**Ernest S. FARANCE, Petitioner,**

v.

**WORKERS' COMPENSATION APPEAL BOARD (Marino Brothers, Inc.), Respondent.**

Commonwealth Court of Pennsylvania.

Argued Oct. 30, 2000.

April 26, 2001.

Susan Aczak, Pittsburgh, for petitioner.

Michael A. Cohen, Pittsburgh, for respondent.

Before KELLEY, FLAHERTY, Judges, and RODGERS, Senior Judge.

## OPINION BY JUDGE KELLEY

Ernest S. Farance (Claimant) petitions for review of the order of the Workers' Compensation Appeal Board (Board) affirming the decision of a workers' compensation judge (WCJ) which denied Claimant's penalty petition that had been filed pursuant to the provisions of the Pennsylvania Workers' Compensation Act (Act).[1] We affirm.

Marino Brothers, Inc. (Employer) hired claimant in 1979 as a laborer and driver of Employer's delivery truck. He continued in his employment until January 19, 1990. On that date, Claimant was injured when a cutting torch he was using exploded, causing injuries to his eyes, neck shoulder and hands. Pursuant to a notice of compensation payable dated February 15, 1990, Claimant received weekly compensation benefits based on injuries described as "multiple lacerations". On June 10, 1991, a supplemental agreement was executed which stated that as of June 20, 1990, Claimant had fully recovered from his physical injuries but he remained disabled as a result of a conversion disorder arising from his work-related injuries. As a result, Claimant's disability benefits continued.

On April 7, 1997, Employer filed a petition to terminate/suspend Claimant's disability benefits. In the petition, Employer alleged that Claimant had no residual disability from his work-related injury as of December 10, 1996. On April 14, 1997, pursuant to Section 435 of the Act[2], Claimant filed a penalty petition in which he alleged that his benefits had been improperly suspended under the provisions of Section 311.1 of the Act,[3,4] Timely

---

1. Act of June 2, 1915, P.L. 736, *as amended,* 77 P.S. §§ 1–1041.4; 2501–2626.

2. Section 435 of the Act states, in pertinent part:

   (d) The department, the board, or any court which may hear any proceedings brought under this act shall have the power to impose penalties as provided herein for violation of the provisions of this act or such rules and regulations or rules of procedure:

   (i) Employers and insurers may be penalized a sum not exceeding ten per centum of the amount awarded and interest accrued and payable: Provided however, That such penalty may be increased to fifty per centum in cases of unreasonable or excessive delays. Such penalty shall be payable to

the same persons to whom the compensation is payable...

   \* \* \*

   (iii) Claimants shall forfeit any interest that would normally be payable to them with respect to any period of unexcused delay which they have caused.

77 P.S. § 991(d).

3. Section 311.1 of the Act, added by Section 6 of the Act of June 24, 1996, P.L. 350, states, in pertinent part:

   (c) An employe is obligated to cooperate with the insurer in an investigation of employment, self-employment, wages and physical condition.

   (d) If an employe ... is receiving compensation under section 306(a) or (b), the insurer may submit a verification form to the employe either by mail or in person. The form shall

answers were filed to the petitions and hearings before a WCJ ensued.

On June 4, 1998, the WCJ issued an order and decision disposing of Employer's termination petition and Claimant's penalty petition in which she made the following relevant findings of fact:

6. The facts on which the penalty petition is based are not in dispute. The insurance carrier sent a verification form (LIBC–760) under Section 311[.1](d) to the claimant for completion. The claimant returned the verification form after the thirty day period set forth in Section 311.1(g) had passed. The insurance company suspended the claimant's benefits effective February 12, 1997. The claimant benefits were reinstated as of March 13, 1997, after the verification form was returned. The claimant's benefits were not reinstated retroactively to the date of the suspension. On the face of LIBC–760 there is

request verification by the employe that the employe's status regarding the entitlement to receive compensation has not changed and a notation of any changes of which the employe is aware at the time the employe completes the verification, including employment, self-employment, wages and change in physical condition. Such verification shall not require any evaluation by a third party; however, it shall include a certification evidenced by the employe's signature that the statement is true and correct and that the claimant is aware of the penalties provided by law for making false statements for the purpose of obtaining compensation.

(e) The employe is obligated to complete accurately the verification form and return it to the insurer within thirty days of receipt by the employe of the form....
\* \* \*
(g) If the employe fails to return the completed verification form within thirty days, the insurer is permitted to suspend compensation until the completed verification form is returned. The verification form utilized by the insurer shall clearly provide notice to the employe that failure to complete the form within thirty days may result in a suspension of compensation payments.

a warning in bold face capital letters which states:

FAILURE TO COMPLETE AND RETURN THIS FORM WITHIN THIRTY DAYS MAY RESULT IN A SUSPENSION OF YOUR COMPENSATION BENEFITS, AS WELL AS PROSECUTION FOR FRAUD UNDER ARTICLE XI OF THE WC ACT.[5]

WCJ Decision, p. 2.

Based on the foregoing, the WCJ concluded that there was no violation of the Act by Employer in suspending Claimant's benefits until the LIBC 760 was completed and returned to the insurance carrier. In fact, the WCJ concluded that the procedure followed by Employer regarding the return of the form was in compliance with the Act and the regulations promulgated by the Pennsylvania Department of Labor and Industry.[6] As a result, the WCJ is-

77 P.S. § 631.1(c)-(e), (g).

4. In particular, Claimant alleged, inter alia, that the provisions of Section 311.1(g) of the Act violate the Pennsylvania and United States Constitutions as it deprives him of property without due process of law, and that the insurer violated the provisions of the Act by failing to reinstate his benefits retroactive to the date of the suspension upon his submission of the verification form.

5. Section 1102(10) of the Act states, in pertinent part:

A person, including, but not limited to...the employe,...commits an offense if the person does any of the following:
\* \* \*
(10) Knowingly and with intent to defraud, fails to make the report required under section 311.1...
77 P.S. § 1039.2(10).

6. The relevant regulations are found in Section 123.502 of Chapter 34 of the Pennsylvania Code which states:

§ 123.502. Verification.

sued an order denying Claimant's penalty petition.[7]

On June 18, 1998, Claimant filed an appeal of the WCJ's decision denying his penalty petition with the Board. On April 6, 2000, the Board issued an order and opinion affirming the WCJ's decision. Claimant then filed the instant petition for review in this Court.[8]

In this appeal, Claimant contends: (1) the Board erred in affirming the WCJ's decision denying his penalty petition because the provisions of Section 311.1(g) of the Act violate the Pennsylvania and United States Constitutions by denying him property without due process of law; and

(2) the Board erred in affirming the WCJ's decision denying Claimant's penalty petition because an employer is required to retroactively reinstate benefits when a claimant complies with the provisions of Section 311.1 of the Act.

We initially note that this Court's scope of review is limited to determining whether there has been a violation of constitutional rights, errors of law committed, or a violation of appeal board procedures, and whether necessary findings of fact are supported by substantial evidence. Section 704 of the Administrative Agency Law, 2 Pa.C.S. § 704; *Lehigh County Vo–Tech*

(a) Insurers may submit Form LIBC–760, "Employee Verification of Employment, Self-employment or Change in Physical Condition", to the employe and employe's counsel, if known, to verify, no more than once every 6 months, that the status of the employe's entitlement to receive compensation has not changed.

(b) Form LIBC–760 shall be delivered to the employe in person or consistent with section 406 of the act.

(c) The employe shall complete and return form LIBC–760 to the insurer within 30 days of receipt of the form.

(d) If the employe fails to comply with subsection (c), the insurer may suspend payments of wage-loss benefits until Form LIBC–760 is returned by the employe.

(e) To suspend payments of compensation due to the employe's failure to comply with subsection (c), the insurer shall provide written notice to the employe, the employe's counsel, if known, and the Department, on Form LIBC–762, "Notice of Suspension for Failure to Return Form LIBC–760 (Employee Verification of Employment, Self-employment or Change in Physical Condition)" of the following:

(1) The workers' compensation benefits have been suspended because of the employe's failure to return the verification form within the 30 day statutorily prescribed time period.

(2) The workers' compensation benefits shall be reinstated by the insurer, effective upon receipt of the completed verification form.

(3) The employe has the right to challenge the suspension of benefits by filing a petition for reinstatement with the Department.

(f) Upon receipt of the completed verification form, the insurer shall reinstate the workers' compensation benefits for which the employe is eligible. The insurer shall provide written notice to the employe, employe's counsel, if known, and the Department, on Form LIBC–763, "Notice of Reinstatement of Workers' Compensation Benefits", that the employe's workers' compensation benefits have been reinstated due to the return of the completed verification form. The notice shall further indicate the date the verification form was received by the insurer and the date of reinstatement of the workers' compensation benefits.

(g) Employes are not entitled to payments of workers' compensation during periods of noncompliance with subsection (c).
34 Pa.Code § 123.502.

7. The WCJ also made findings of fact and conclusions of law relating to Employer's termination/suspension petition. *Id.* at pp. 2–8. Likewise, the WCJ issued an order denying Employer's petition. *Id.* at p. 8. However, Employer did not appeal this determination to the Board.

8. Pursuant to an order of this Court dated July 11, 2000, the Pennsylvania Trial Lawyers Association has filed an *amicus curiae* brief in support of Claimant's appeal.

School v. Workmen's Compensation Appeal Board (Wolfe), 539 Pa. 322, 652 A.2d 797 (1995).

■ In order for the imposition of penalties to be appropriate, a violation of the Act or of the rules and regulations issued pursuant to the Act must appear on the record. *Galloway v. Workers' Compensation Appeal Board (Pennsylvania State Police)*, 756 A.2d 1209 (Pa.Cmwlth. 2000); *Moore v. Workmen's Compensation Appeal Board (Reading Paperboard Corp.)*, 676 A.2d 690 (Pa.Cmwlth.), *petition for allowance of appeal denied*, 546 Pa. 658, 684 A.2d 559 (1996). However, the imposition of a penalty is at the discretion of the WCJ. *Galloway; Essroc Materials v. Workers' Compensation Appeal Board (Braho)*, 741 A.2d 820 (Pa.Cmwlth.1999); *Moore.* Thus, the imposition of a penalty is not required even if a violation of the Act is apparent on the record. *Galloway; Essroc Materials; Moore.* Because the assessment of penalties, as well as the amount of penalties imposed, are discretionary, we will not overturn a penalty on appeal absent an abuse of discretion by the WCJ. *Essroc Materials.*

■ As noted above, Claimant first contends that the Board erred in affirming the WCJ's decision denying his penalty petition because the provisions of Section 311.1(g) of the Act violate the Pennsylvania and United States Constitutions by denying him property without due process of law. In particular, Claimant asserts that because the provisions of Section 311.1(g) of the Act and Section 123.502(c) and (g) of the regulations permit the suspension of benefits without a hearing, they constitute an impermissible automatic supersedeas under *Baksalary v. Smith*, 579 F.Supp. 218 (E.D.Pa.1984). We do not agree.

As this Court has previously noted:

In *Baksalary* the court was concerned with the automatic supersedeas which typically occurred in two types of cases:

Thus, in two sorts of cases an employee receiving benefits can have his benefits terminated pending disposition of his employer's or his employers' insurer's petition to terminate or modify those benefits. The first sort of case is one *where the petition alleges that the employee has returned to work at the same or higher wages.* The second sort of case is one where the petition alleges that the employee has fully recovered...

[In both cases], [t]he employee has no avenue to contest application of the automatic supersedeas other than his defense on the merits of the petition before the referee. Referees typically take one year or more to decide contested cases.

*Baksalary*, 579 F.Supp. at 221 (emphasis added). The *Baksalary* court concluded that because under Section 413's automatic supersedeas there was no effective process available for a claimant to contest the employer's petition to terminate or modify benefits prior to such termination or modification, Section 413 did not afford due process and was unconstitutional.

Like the *Baksalary* court, this Court has held that it is not the policy of the Court to endorse an employer's unilateral decision to cease paying a claimant's benefits without a written agreement or official order. Such action is an unauthorized supersedeas for which penalties may be imposed. *Arnott v. Workmen's Compensation Appeal Board (Sheehy Ford Sales, Inc.)*, [156 Pa.Cmwlth. 167, 627 A.2d 808 (Pa.Cmwlth.1993), *petition for allowance of appeal denied,*] 537 Pa. 624, 641 A.2d 589 (1994).

*Crawford County Care Center v. Workmen's Compensation Appeal Board (Daly)*, 168 Pa.Cmwlth. 169, 649 A.2d 203, 206–207 (1994). *See also Gillis v. Workers' Compensation Appeal Board (Willits Roofing, Inc.)*, 725 A.2d 257, 259–260 (Pa. Cmwlth.1999) ("[T]he law is well settled that an employer who is obligated to pay a claimant benefits can cease paying benefits if it satisfies any of the following conditions: (1) submits a supplemental agreement pursuant to Section 408 of the Act, 77 P.S. § 732; (2) submits a final receipt signed by the claimant pursuant to Section 434 of the Act, 77 P.S. § 1001; (3) secures an interlocutory order from a WCJ granting a discretionary supersedeas pursuant to Sections 413(a.1) and 413(a.2) of the Act, 77 P.S. § 774; (4) files a petition to suspend compensation with an accompanying affidavit from the insurer that the claimant has returned to work at wages greater than or equal to his pre-injury wage pursuant to Section 413(c) of the Act, 77 P.S. § 774.2; or (5) secures a final order from a WCJ terminating a claimant's benefits. *Sheridan v. Workers' Compensation Appeal Board (Anzon, Inc.)*, 713 A.2d 182 (Pa.Cmwlth.1998). Until one of the above events occurs, an employer is under a continuing obligation to pay a Claimant benefits properly owed to him. *Id.*").

In contrast, in the instant case, the suspension of benefits resulted from Claimant's failure to timely submit the Form LIBC–760, a duty that is required under the provisions of Section 311.1 of the Act. *See, e.g., Galloway*, 756 A.2d at 1213–1214 ("[I]t is apparent that [Section 311.1] of Act 57 is aimed at the reporting of employment, self-employment and physical condition by claimants at the request of employers. While Section 311.1(g) of Act 57 does

permit the suspension of benefits by an employer in the event a completed verification form is not returned by a claimant, we do not believe that the Legislature intended for suspensions to occur in the event a residential address is not listed. In other words, the plain meaning of the Section reflects that suspensions may occur if a verification is lacking information which the Section intends to acquire; namely, information regarding employment, self-employment and/or physical condition...").

In addition, as noted above, Claimant's failure to submit the Form LIBC–760, if done knowingly and with an intent to defraud, could constitute a criminal offense pursuant to the provisions of Section 1102(10) of the Act. Moreover, as noted by the WCJ, Claimant was provided with the following notice on the face of the Form LIBC–760 in bold face capital letters prior to the suspension of his benefits:

**FAILURE TO COMPLETE AND RETURN THIS FORM WITHIN THIRTY DAYS MAY RESULT IN A SUSPENSION OF YOUR COMPENSATION BENEFITS, AS WELL AS PROSECUTION FOR FRAUD UNDER ARTICLE XI OF THE WC ACT.**

WCJ Decision, p. 2.

Thus, Claimant was provided with notice and the opportunity to submit the required information prior to the suspension of his benefits. In addition, as found by the WCJ, Claimant's benefits were immediately reinstated once he submitted the required form. *Id.* Clearly, the due process concerns in *Baksalary* are inapposite, and Claimant's reliance on that opinion is misplaced.[9] *See, e.g., Findley v. Workers'*

---

**9.** Moreover, even if it assumed that Claimant is correct in his assertion that the suspension pursuant to Section 311.1 of the Act violated

his due process rights, this fact alone does not compel the grant of his penalty petition. As noted above, the imposition of a penalty is at

*Compensation Appeal Board (Brooklyn Bagel, Inc.)*, 707 A.2d 1220 (Pa.Cmwlth. 1998) (Claimant was not denied due process where he had the opportunity to be heard prior to the issuance of an order requiring him to undergo a physical examination and the suspension of his benefits for failing to attend the physical examination.).

▮ Finally, Claimant asserts that the Board erred in affirming the WCJ's decision denying Claimant's penalty petition because an employer is required to retroactively reinstate benefits when a claimant complies with the provisions of Section 311.1 of the Act. In particular, Claimant asserts that because Section 311.1 of the Act and Section 123.502 of the regulations speak of a suspension of benefits, and not a forfeiture of benefits, his benefits should have been retroactively reinstated upon his submission of the Form LIBC-760.

In support of this claim, Claimant points to the language of Section 306(f.1)(8) of the Act which states:

(8) If the employe shall refuse reasonable services of health care providers, surgical medical and hospital services, treatment, medicines and supplies, he shall forfeit all rights to compensation for any injury or increase in his incapacity shown to have resulted from such refusal.

77 P.S. § 531(8). Claimant asserts that because Section 306(f.1)(8) provides for a forfeiture of benefits, and Section 311.1 of the Act and Section 123.502 of the regulations provide for a suspension of benefits, a reinstatement after a suspension under Section 311.1 of the Act and Section 123.502 of the regulations must be a retroactive reinstatement.

However, Claimant's argument overlooks the opinion of this Court in *Stuart Painting Co. v. Workmen's Compensation Appeal Board (Asvestas)*, 148 Pa.Cmwlth. 411, 611 A.2d 787, *petition for allowance of appeal denied*, 532 Pa. 649, 614 A.2d 1144 (1992). In interpreting the prior version of Section 306(f.1)(8) of the Act, this Court stated the following, in pertinent part:

The supreme court in *Muse v. Workmen's Compensation Appeal Board (Western Electric Co.)*, 514 Pa. 1, 8, 522 A.2d 533, 537 (1987), concluded that the words of Section 306(f)(4) of the Act are clear and that "[t]he purpose of the statute is to provide cure where it can reasonably be done by medical arts for the benefit of the claimant; that he not be handicapped in his health or his prospects for gainful and fulfilling employment." The court, however, does not indicate whether the forfeiture language in the statute can be interpreted to mean a forfeiture of benefits forever.

the discretion of the WCJ, and a penalty is not required even if a violation of the Act is apparent on the record. *Galloway; Essroc Materials; Moore.* Thus, the WCJ was free to choose not to grant the penalty petition even if Employer imposed an impermissible automatic supersedeas by suspending Claimant's benefits. *See, e.g., Crawford County Care Center*, 649 A.2d at 207 ("[T]herefore, Employer's unilateral suspension of benefits was in violation of Claimant's rights under *Baksalary*, and the imposition of a penalty for violation of the act was proper and well within the discretion of the [WCJ] . . ."); *see also Arnott v. Workmen's Compensation Appeal Board (Sheehy*

*Ford Sales, Inc.)*, 156 Pa.Cmwlth. 167, 627 A.2d 808 (1993), *petition for allowance of appeal denied*, 537 Pa. 624, 641 A.2d 589 (1994) (Although an employer's unilateral cessation of paying a claimant's benefits without written agreement or official order operated as unauthorized supersedeas under *Baksalary*, which could not be endorsed, substantial evidence supported the denial of retroactive benefits to the claimant; the claimant did not file a formal petition for penalties and counsel fees and the employer successfully established that the claimant had obtained employment, thereby constituting a reasonable basis for denying penalties and counsel fees.).

We hold that the Board properly interpreted that the meaning of the forfeiture provision in Section 306(f)(4) is analogous to the language of Section 314 of the Act, 77 P.S. § 651 [10], which deprives a claimant of compensation for refusing or neglecting, without reasonable cause or excuse, to submit to a physical examination. Under Section 314 of the Act, payment of benefits is suspended until the claimant submits to the examination. If claimant subsequently complies with an order for examination, payment of benefits resumes.

*Stuart Painting Co.*, 611 A.2d at 790.

Thus, this Court has interpreted the forfeiture provision of the former version of Section 306(f.1)(8) to be of the same effect as the suspension provision of Section 314 of the Act. *Id.* Under either section of the Act, the payment of a claimant's benefits resumes when the claimant ultimately complies with the acts required by these sections. *Id.*

Likewise, the provisions of Section 311.1 of the Act and Section 123.502 of the regulations provide for the suspension of a claimant's benefits during a period of noncompliance, and the payment of a claimant's benefits resumes when the claimant ultimately complies with the requirements of these sections. In short, the WCJ did not err in suspending Claimant's benefits during the period of noncompliance, and in ordering the reinstatement of benefits as of the date he ultimately submitted the Form LIBC–760, and the Board did not err in affirming the WCJ's decision.

10. Section 314(a) of the Act states, in pertinent part:

    [T]he refusal or neglect, without reasonable cause or excuse, of the employe to submit to such examination or expert interview ordered by the workers' compensation judge, either before or after an agreement

Accordingly, the order of the Board is affirmed.

### ORDER

AND NOW, this 26th day of April, 2001, the order of Workers' Compensation Appeal Board, dated April 6, 2000 at No. A98–2453, is affirmed.

or award, shall deprive him of the right to compensation, under this article, during the continuance of such refusal or neglect, and the period of such neglect or refusal shall be deducted from the period during which compensation would otherwise be payable. 77 P.S. § 651(a).